Unfortunately, the restraints of time prevent a full-blown analysis of the basis for my disagreement with the majority opinion. A brief discussion will have to suffice.
Initially, if I were to accept the premise adopted by the majority opinion, I would have no difficulty in accepting its rationale and its conclusion. But it is precisely this premise with which I disagree. The majority opinion assumes that the applicable Medical Malpractice Act establishes the standard of care owed by the nursing home to the patient in this case; and then it proceeds to hold that the community standard of due care established by that Act must be proved by expert medical testimony. Ordinarily, this would be the case; but, here, through the contractual relationship of the parties, the nursing home had undertaken a higher duty of care.
The intestate's children sought out a nursing home that would agree to care for their mother under the circumstances of her grave condition, which required extraordinary attention. In its acceptance of Mrs. Marshall as a patient, Rosemont was fully aware that she required "continuous care." Then, after she had "escaped" on one occasion, Rosemont was again admonished *Page 1132 
by the family doctor to provide "twenty-four hour" care, which he described as "to have somebody eyeball [her] twenty-four hours a day."
Surely, it is beyond debate that the applicable Medical Malpractice Act does not preclude a health care provider from undertaking a higher degree of care than the reasonable care standard prescribed by the Act. The standard prescribed by the Act applies in the absence of any specific undertaking by the health care provider. Indeed, suppose Mrs. Marshall, instead of being a "problem" patient, had been in good general health, capable of attending to her personal needs, but in need of housing and a minimum of care. Suppose further that, in order to encourage Rosemont to accept her as a patient, the family agreed that something less than the usual "nursing care" was required. Under those circumstances, would Rosemont be held to the ordinary, reasonable care standard prescribed by the Act?[1]
I ask this rhetorical question as the preface to another one. Suppose the personal representative, by way of expert testimony, had proved the standard of reasonable care provided by nursing homes in the "medical community"? Doing so would have established a duty of a standard lower than that degree of care which Rosemont in this instance had undertaken to provide. The ultimate question, then, is: Can Rosemont undertake an extraordinary degree of care, and then defend an allegation of its breach on the basis of a lesser duty imposed by law? I submit that the question is self-answering.
Therefore, I would affirm the judgment, holding that the trial court did not err in rejecting, as irrelevant, Defendant's insistance on expert testimony to prove a lesser duty of care than that undertaken by Defendant.
[1] To be sure, the dictates of public policy would void any such agreement that lowered the standard of care to levels of indecency. I am merely suggesting that general tenets of tort law permit undertakings above and below the duecare standards otherwise prescribed by the Medical Malpractice Act.